Filed 2/11/16  In re C.M. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re C.M., a Person Coming Under the Juvenile Court Law. | B260784 |
| | (Los Angeles County Super. Ct. No. CK80972) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | |
| v. | |
| TRAVIS H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Amy Pellman, Judge.  Affirmed.

Darlene Azevedo Kelly, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Respondent.

Travis H. (father) appeals from the juvenile court's order denying father's motion seeking to be granted presumed father status. Father argues that the trial court erred in determining that father did not qualify as a presumed father under Family Code section 7611, subdivision (d). We find no error in the trial court's ruling, therefore we affirm.

## COMBINED FACTUAL AND PROCEDURAL BACKGROUND

On June 11, 2014, the juvenile court ordered C.M., who was then two months old, detained from parental custody and placed in the care of respondent Los Angeles County Department of Children and Family Services (DCFS) because both parents were incarcerated and there was no relative available who could immediately take placement of the child.[1] The petition, filed on behalf of C.M. pursuant to Welfare & Institutions Code section 300, alleged that both mother and father had histories of drug abuse, and that the child had been placed in a detrimental and endangering situation when hypodermic needles were left in the family vehicle in reach of the child.

Father and Brittany M. (mother) were present in court at the next hearing on July 14, 2014.[2] Father and mother were appointed counsel. The court asked father if he had ever lived with the child, and if his name was on the birth certificate. Father answered "no" to both questions. However, he stated that there was no question that he was the child's father.

The court found that father was the child's alleged natural father, and ordered that he have supervised visits three times per week. The child was detained with the maternal grandmother.

The jurisdictional hearing was held on August 20, 2014. Mother appeared but father did not. Mother pled no contest, and the petition was sustained.

On September 26, 2014, father's counsel filed a motion requesting that father be found to be the child's presumed father. On October 2, 2014, the court continued the

---

[1] DCFS has not filed a brief in this appeal.

[2] Mother is not a party to this appeal.

2

disposition hearing so that mother could appear in custody. The court indicated that it would rule on father's motion at the continued hearing.

The disposition hearing was held November 24, 2014. Mother and father were present. Both parents signed a voluntary declaration of paternity, and their signatures were witnessed by the court clerk. The court ordered father's counsel to ensure that the declaration was filed with the appropriate state agency.

The court denied father's request that he be declared a presumed father under Family Code section 7611, subdivision (d). Under that subdivision, a person is presumed to be the natural parent of a child if he "receives the child into his . . . home and openly holds out the child as his . . . natural child." The court rejected father's argument that, because he had received the child into a car and was temporarily living in that car, father received the child into his home. The trial court explained, "living in a car [a] few days or even living a few days here and there with a child does not rise to the level of presumed as interpreted by the case law." The trial court indicated that it was willing to revisit the issue of presumed father status for the father in the future, stating "at this point, I'm not able to grant presumed father status. I see that he has signed a voluntary declaration of paternity, which is good and a great start."[3]

On December 5, 2014, father filed his notice of appeal.

## DISCUSSION

### I. Applicable law and standard of review

"In dependency proceedings, fathers are divided into four categories: de facto fathers, alleged fathers, natural fathers and presumed fathers. A man, such as a step father, who has assumed the role of parent, is a 'de facto father.' A man who may be the father of the dependent child but has not been established to be the natural or presumed father is an 'alleged father.' A man who has been established to be the biological father

---

[3]     The court has inquired of father's counsel whether any subsequent proceedings rendered the issue of father's status as presumed father moot. Counsel has informed the court that as of the time of this opinion, the juvenile court has not made any findings or orders concerning father's paternity subsequent to the subject orders.

is a 'natural father.' A man who has held the child out as his own and received the child into his home is a 'presumed father.' A 'natural father' can be, but is not necessarily, a 'presumed father' and a 'presumed father' can be, but is not necessarily, a 'natural father.'" (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 801, fns. omitted.)

Of these four categories, "[p]resumed father ranks the highest. Only a 'statutorily presumed father' is entitled to reunification services under Welfare and Institutions Code section 361.5, subdivision (a) and custody of his child under Welfare and Institutions Code section 361.2." (*In re Jerry P., supra,* 95 Cal.App.4th at p. 801, fn. omitted.)

"[Family Code] section 7611 sets out a number of ways a father can obtain 'presumed father' status. He can marry or attempt to marry the child's mother, he and the mother can execute a declaration of paternity or he can 'receive[] the child into his home and openly hold[] out the child as his natural child.'" (*In re Jerry P., supra,* 95 Cal.App.4th at p. 802, fn. omitted.)

An alleged father has the burden to establish, by a preponderance of the evidence, the foundational facts supporting his entitlement to presumed father status, i.e. that he received the child into his home and openly and publicly acknowledged paternity. (*In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1652-1653 (*Spencer W.*).) It was for the trier of fact to determine whether the foundational facts were established by a preponderance of the evidence. (*Id.* at p. 1653.)

We review for substantial evidence the trial court's rejection of father's claim to presumed father status under Family Code section 7611, subdivision (d). Under this standard, we must determine whether the evidence would permit the trier of fact to conclude that one of the foundational elements necessary to presumed father status was not present. (*Spencer W., supra*, 48 Cal.App.4th at p. 1653.)

**II. The evidence supports the trial court's finding that father failed to carry his burden of proving that he received the child into his home**

Interviews with mother and father revealed the following facts: while mother was pregnant, mother and father went to Iowa to work for paternal grandmother. When they realized that father was not allowed to leave California due to parole restrictions, they

4

returned to California. Father and mother lived separately following their return to California. C.M. was apparently born in California.

After C.M. was born in March 2014, mother went to live with the maternal great-grandparents. In May 2014, mother got into an argument with her sibling, who threatened to call the police. Mother called father, letting him know that she needed to leave the home. Father came to get mother, which resulted in a restraining order being filed against him.

At the time that mother called him, father was in a drug treatment program. However, father left the program because he felt he needed to be supportive of mother. Father stated that although they were both using drugs at the time, they were trying to get into a program where mother could keep the child with her. They lived out of a car for a few days, and went to various relatives' homes. They spent a few nights in the driveway of paternal grandfather's home. Mother and father were unable to find permanent housing.

At the jurisdictional hearing on August 20, 2014, when the court inquired of mother whether there was any point when father lived with mother and the child, mother responded that the only time was the last couple of days before mother was detained, when she and father lived together in mother's vehicle. Mother testified that father never lived with her in her residence, and never took the child into his own residence.

Thus, the only evidence to support a finding that father "received the child into his home" as required under Family Code section 7611, subdivision (d), was that father and mother lived together with the child for a few days in mother's vehicle. [4] The trial court did not err in determining that this evidence was not sufficient to establish the presumption set forth in that statute. Even if a vehicle can be considered a home, the evidence here shows that father did not receive the child into his vehicle, but that mother permitted father to reside in her vehicle. This situation does not mandate a finding that

---

[4] While mother referred to the car as her vehicle, she also reported to DCFS that her brother had reported the car stolen months prior to mother and father's use of it as shelter. Thus, it appears that the car belonged to either mother or mother's brother.

father received the child into his home. (*Spencer W., supra*, 48 Cal.App.4th at p. 1653 [foundational element of father receiving child into his home not met where mother permitted father to reside in her home].) Instead, the trier of fact could justifiably conclude that father's residence with the child in mother's car was "not demonstrative of [father's] commitment to the child but reflected that [father] acted out of personal convenience." (*Ibid.*)

Father cites *In re D.A.* (2012) 204 Cal.App.4th 811, for the proposition that the statutory requirement of receiving a child into a home is satisfied even when the child visits in the father's home. The relevant facts of *D.A.* were that mother "'drop[ped] [D.A.] off for overnights while she was out partying and pick[ed] him up the next morning.'" (*Id.* at p. 827.) There was no question in that case that the presumed father had a residence at the time. The case is factually distinguishable from the matter before us, where father did not have a home but was living a transient lifestyle, staying in mother's car or with various relatives, and never took the child into his own home or vehicle.

In sum, we find no error in the trial court's conclusion that father did not meet his burden of showing that he received the child into his home under Family Code section 7611, subdivision (d). [5]

## III. The record does not reflect a blanket finding that a car is not a home

Father argues that the trial court's decision was based on a legal finding that "A car is not a home." Father devotes a large portion of his brief to a discussion of various Penal Code statutes and Supreme Court authority which recognize that a car can be considered a home or residence. We find that we need not address the legal question of whether a car can be considered a home under Family Code section 7611, subdivision (d) for two reasons: first, the court did not base its decision on a blanket finding that a car is

---

[5]     Family Code section 7611, subdivision (d) mandates that the parent prove two foundational facts before the presumption will apply: first, the parent must receive the child into his or her home; and second, the parent must openly hold out the child as his or her natural child. Because father failed to provide sufficient evidence of the first foundational element to meet this presumption, we need not discuss the second element.

not a home under that statute. Second, as set forth above, mother testified that the vehicle belonged to her, not father; thus father cannot be said to have taken the child into his vehicle.

First, we review the trial court's rationale for denying father presumed father status under Family Code section 7611, subdivision (d). As set forth above, the trial court focused on the facts of the case. The court stated "living in a car [a] few days or even living a few days here and there with a child does not rise to the level of presumed as interpreted by the case law." Thus, the court focused on the transient nature of father's lifestyle at the time, not strictly the fact that he was living in a car rather than a home.

Father contends that the trial court stated unilaterally that "[a] car is not a home." While the trial court did make this statement, father has taken it out of context. The statement was not made as a rationale for denying father presumed father status. Instead, the court was participating in an exchange with counsel, and corrected counsel's misstatement. Father's counsel stated: "And just going back to the issue of presumed father status, I understand that a house is not technically a home." The court corrected counsel's misstatement, stating: "A car is not a home." Father's counsel then continued: "I mean, a car is not necessarily a home." As can be seen when viewing the text in its entirety, the court was merely correcting counsel and not making a blanket statement of the law.

As set forth above, the court's rationale for denying presumed father status under Family Code section 7611, subdivision (d) was based on the fact that father never received the child into his home. Father was living a transient lifestyle and was moving between relatives' residences and mother's car. Under the circumstances, we find no error in the trial court's finding that father did not receive the child into his home and thus did not qualify as a presumed parent under Family Code section 7611, subdivision (d).

Furthermore, mother testified that the car in which they temporarily stayed was her car. Father points to no evidence that it was his car. Even if it could be said that the car was father's residence, father was there at the sufferance of mother. As set forth in

7

*Spencer W.*, the trial court could justifiably conclude that this was a convenient arrangement for father rather than a demonstration of father's commitment to the child.

**DISPOSITION**

The order is affirmed.[6]

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST

---

[6] As noted above, the record shows that mother and father signed a voluntary declaration of paternity, and the trial court indicated that it was inclined to grant presumed father status to father once the declaration was filed with the proper state agency. This opinion is limited to the question of whether the trial court erred in denying father presumed father status under Family Code section 7611, subdivision (d), at the time of the ruling in November 2014. We render no opinion on any subsequent rulings regarding father's status. In addition, the record shows that father was granted reunification services and visits with C.M., thus the juvenile court treated father as if he were a presumed parent. Under the circumstances, if father can qualify for presumed father status under any of the other ways provided for under the law, counsel should bring this matter to the juvenile court's attention.